UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. ERISA LITIGATION II | MASTER FILE<br>08 Civ. 5722 (LTS)(DCF)<br><br>ECF Case |
| This Document Relates To:<br>All Actions | ORAL ARGUMENT REQUESTED |

# DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTIONS TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT

**WEIL, GOTSHAL & MANGES LLP**
Joseph S. Allerhand
Nicholas J. Pappas
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Counsel for American International Group, Inc., Edward Bacon, Joseph Cella, Robert Cole, John Q. Doyle, Georgia Feigel, David Fields, Anthony Galioto, Howard Greene, Richard Grosiak, David Junius, Andrew Kaslow, Gary Reddick, Charles Schader, Stephen Schoepke, Kathleen Shannon, Robert Thomas, Edmund S.W. Tse, and Thomas Wright*

**SIMPSON, THACHER & BARTLETT LLP**
Paul C. Curnin
Michael J. Garvey
Craig S. Waldman
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Robert B. Willumstad*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Richard J. Rabin
Jamison A. Diehl
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for Martin J. Sullivan*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I. The SAC Must Be Dismissed Because, Under *Lehman*, ERISA Does Not Require Fiduciaries to Act Upon Inside Information .........................................................................2

II. *Lehman* Confirms That the SAC Is Subject to Dismissal Under the *Moench* Presumption ...........................................................................................................................5

    A. *Lehman* Confirms That Defendants Are Entitled to the *Moench* Presumption ...........................................................................................................5

    B. *Lehman* Confirms That Under the Moench Presumption, Plaintiffs' Claims Must Be Dismissed ..................................................................................9

CONCLUSION ................................................................................................................................10

i

Pursuant to this Court's Order dated September 4, 2013 (Doc. No. 202), Defendants[1] respectfully submit this supplemental memorandum of law, the accompanying Declaration of Nicholas J. Pappas, dated September 20, 2013 (the "Pappas Supplemental Decl."), and the exhibit attached thereto, to address new, controlling authority: *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013) ("*Lehman*").

## PRELIMINARY STATEMENT

After Defendants moved to dismiss the Consolidated Second Amended Complaint (the "SAC"), the Second Circuit issued its landmark decision in *Lehman*, holding that ERISA fiduciaries cannot be liable for failing to act on non-public information. *Lehman* demolishes the core of the SAC that devotes 86 sub-paragraphs, spanning 19 single-spaced pages, to cataloguing the allegedly non-public information that supposedly should have compelled Defendants to act. *See* SAC ¶¶ 387-89 (attached as Exhibit A to the Pappas Supplemental Decl.).

Under *Lehman*, Plaintiffs can rely only on publicly known facts to pursue their prudence claim. But those facts provide no traction for Plaintiffs. Instead, those publicly known facts, including AIG's massive capital raises in May and August 2008; the bullish opinions of market analysts; and the buoyancy of AIG's stock price, which remained as high as $18 per share days before AIG suddenly needed governmental assistance, all drive to one conclusion: the market viewed AIG as a "sound investment." Thus, after *Lehman*, Plaintiffs' prudence claim boils down to arguing that ERISA fiduciaries should somehow have outsmarted the market—a standard that has been decisively rejected. Furthermore, while *Lehman*'s central holding applies irrespective

---

[1] "Defendants" are: American International Group, Inc. ("AIG"), Edward Bacon, Joseph Cella, Robert Cole, John Q. Doyle, Georgia Feigel, David Fields, Anthony Galioto, Howard Greene, Richard Grosiak, David Junius, Andrew Kaslow, Gary Reddick, Charles Schader, Stephen Schoepke, Kathleen Shannon, Martin J. Sullivan, Robert Thomas, Edmund S.W. Tse, Robert B. Willumstad, and Thomas Wright.

1

of the *Moench* presumption, *Lehman* also supports Defendants' argument that the *Moench* presumption applies here and mandates dismissal of Plaintiffs' claims.

## ARGUMENT

I. **The SAC Must Be Dismissed Because, Under *Lehman*, ERISA Does Not Require Fiduciaries to Act Upon Inside Information**

*Lehman* unequivocally confirms the argument Defendants made in their motions to dismiss[2] that Plaintiffs' prudence claim for failure to divest the Plans[3] of AIG stock on the basis of non-public information must be dismissed as a matter of law because fiduciaries cannot be required to commit insider trading. *Lehman*, 722 F.3d at 147 (explaining that "[t]he prudent man does not commit insider trading," and "plan managers will not be able to comply with their duty of prudence by divesting the plan of its pre-existing investment without risking liability for insider trading"). And *Lehman* goes even further. Under *Lehman*, not only are fiduciaries not required to divest a plan of company stock based on inside information, but fiduciaries also are "under no obligation to seek out *or act upon* inside information" at all, including by ceasing to make new investments in the company stock fund. *Id.* (emphasis added).[4] Therefore, under

---

[2] *See* AIG Memorandum of Law in Support of Motions to Dismiss the Consolidated Second Amended Complaint (Doc. No. 148) (the "AIG Mem.") at 32-33; AIG Reply Memorandum of Law in Further Support of Motion to Dismiss the Consolidated Second Amended Complaint (Doc. No. 192) (the "AIG Reply") at 28-30; Defendants' Notice of Supplemental Authority, and Response to Plaintiffs' Notice of Supplemental Authorities, in Further Support of Defendants' Motions to Dismiss Consolidated Second Amended Complaint (Doc. No. 199) at 2-3, 7.

[3] The "Plans" are the American International Group, Inc. Incentive Savings Plan (the "ISP"), and the American General Agents' and Managers' Thrift Plan (the "AGC Plan").

[4] Defendants did not previously argue that Plaintiffs' claim for failure to close the AIG Stock Fund to new investments must be dismissed to the extent that the claim is premised on non-public information because this Court previously ruled that Defendants "could have taken a variety of steps that would not have been violations of the securities laws, including … ceasing new investments in the AIG Stock Fund[.]" *In re AIG ERISA Litig. II*, 2011 WL 1226459, at *8 (S.D.N.Y. Mar. 31, 2011). *Lehman*, however, changed the law in the Second Circuit on this point. While recognizing that merely closing a stock fund to new investments "would not run afoul of federal securities laws given the absence of a purchase or sale of stock[,]" *Lehman* held

2

*Lehman*, Defendants cannot be liable as a matter of law for failing to divest the Plans of AIG stock, or for failing to close the AIG Stock Fund to new investments, on the basis of non-public information.

Yet here, Plaintiffs' prudence claim rests on the now discredited theory that Defendants knew or should have known that AIG stock was an imprudent investment based on non-public information about AIG.  *See* Ex. A (listing allegations of non-public information that allegedly should have caused the ERISA fiduciaries to act).  Plaintiffs have no choice but to rely on non-public information because, as Plaintiffs admit and as detailed in Defendants' motions to dismiss (*see* AIG Mem. at 4, 8-16, 26-28), the publicly known information about AIG led the market and its most sophisticated investors and participants to view AIG as a "sound investment" up until its sudden need for governmental assistance in mid-September 2008.  *See* Plaintiffs' Memorandum in Opposition to AIG's Motion to Dismiss the Consolidated Second Amended Complaint (Doc. No. 177) ("Pls. Opp.") at 62.[5]  Indeed, AIG completed a $20 billion capital raise – "one of the largest capital raises in history" in May 2008 (SAC ¶ 296), and raised an additional $3 billion in capital in August 2008 – precisely the circumstances that the Second Circuit recognized in *UBS* as a clear "sign that UBS's likelihood of financial recovery was generally viewed as favorable"

---

that fiduciaries nevertheless are "under no obligation to either seek out *or act upon* inside information in the course of fulfilling their duties under ERISA." *Lehman*, 722 F.3d at 147 (emphasis added).

[5] Consistently with its holding in *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 475 (2012) that a fiduciary's decisions are not to be judged "'from the vantage point of hindsight'" (citations omitted), the Second Circuit explained in *Lehman* that "the fact that Lehman *ultimately* declared bankruptcy must not be allowed to influence [the Court's] assessment of whether the Benefit Committee Defendants acted prudently during the class period." *Lehman*, 722 F.3d at 148 (emphasis in original).  Likewise, the fact that AIG ultimately received government assistance must not be allowed to influence this Court's assessment of whether Defendants here acted prudently prior to that time.  Indeed, the Second Circuit noted in *Lehman* that the mere belief that Lehman, like Bear Stearns, might receive federal assistance rendered reasonable the fiduciaries' belief that Lehman would remain a viable company.  *Lehman*, 722 F.3d at 150.

3

at the time. *Taveras v. UBS AG*, 513 F. App'x 19, 24 (2d Cir. 2013) (summary order). Further, as late as early September 2008, analysts uniformly continued to view AIG as a viable company with the potential for long-term investment upside (*see* AIG Mem. at 15-16, 27), and "'large commercial banks, investment banks, and other financial institutions'" did little, if anything, to reduce their exposure to AIG prior to September 15, 2008.[6] *See id.* at 16 (quoting SAC ¶ 321). Even the analyst reports that Plaintiffs chose to incorporate by reference into the SAC suggested that AIG stock was suitable for the "long-term horizon of retirement investing" that the Second Circuit requires of ERISA fiduciaries. *Citigroup*, 662 F.3d at 138.[7] And other fiduciaries apparently agreed, as Plaintiffs alleged that AIG remained "'one of the 10 most widely held stocks in 401(k) retirement plans'" until AIG's receipt of governmental assistance. Consolidated Amended Complaint ¶ 243 (quoting Eric Dash, *Throwing a Lifeline to a Troubled Giant*, N.Y. TIMES, Sept. 18, 2008 at C1).[8] And just three trading days before AIG's sudden need for governmental assistance, AIG stock was still trading at nearly $18 per share.[9]

In the face of these uncontroverted public facts, Plaintiffs resort to arguing that the market's view of AIG as a "sound investment" should be given "little weight" because AIG

---

[6] *See also Lehman*, 722 F.3d at 149 (noting that "in Lehman's final hours, the market arguably viewed the 158-year-old company as a going concern by assigning it a positive expected value" of $3.65 per share).

[7] *See* Pappas Decl. in Support of Defendants' Motions to Dismiss the Consolidated Second Amended Complaint, dated Nov. 20, 2012 (Doc. No. 149) (the "Pappas Decl."), Ex. I (April 28, 2008 Credit Suisse report) at 1 ("we see good value in the AIG shares for investors with over a one year time horizon"), Ex. H (May 27, 2008 Citigroup report) at 6 ("we continue to believe that AIG's solvency remains sustainable in the long term given its global and diversified platforms"), and Ex. N (August 18, 2008 Goldman Sachs report) at 1 (maintaining a "neutral" rating for AIG, with a 12-month price target of $23.00, unchanged from the price on that date).

[8] Plaintiffs, apparently recognizing how much the fact that other fiduciaries continued to hold AIG stock undermines their claim, omitted reference to this public metric from the SAC. *Compare* CAC ¶ 243 *to* SAC ¶ 321.

[9] AIG stock closed at $17.55 per share on Thursday, September 11, 2008, and at $12.14 per share on Friday, September 12, 2008. Pappas Decl., Ex. F (AIG stock prices).

4

allegedly "failed to provide complete information about [its] dire financial situation to Plan participants and the public."[10] But Plaintiffs' assertion that Defendants knew or should have known that AIG was an imprudent investment when the market's most sophisticated investors and participants viewed it as a "sound investment" (Pls. Opp. at 62) boils down to holding Defendants liable for failing to outsmart the market—a requirement that ERISA unquestionably does not impose upon fiduciaries.[11] Accordingly, under *Lehman*, regardless of whether the *Moench* presumption is applied, Plaintiffs' claims must be dismissed in their entirety.

II.     ***Lehman* Confirms That the SAC Is Subject to Dismissal Under the *Moench* Presumption**

After *Lehman*, the Court need not reach the question whether Defendants are entitled to the *Moench* presumption. But if the Court reaches this question, *Lehman* supports Defendants' argument that the *Moench* presumption applies and confirms that the SAC should be dismissed under *Moench*.

   A.     ***Lehman* Confirms That Defendants Are Entitled to the *Moench* Presumption**

*Lehman* confirms that the *Moench* presumption applies. First, *Lehman* eviscerates Plaintiffs' argument that the provisions in the Plans' Trust Agreements stating that AIG "shall have the exclusive authority and discretion to select the investment funds … available for investment under the Plan[s]" establish that the Plans did not require or strongly favor offering

---

[10] Pls. Opp. at 62; *see also id.* at 46 ("AIG did not disclose its true adverse financial condition to the market, and neither the credit rating agencies nor analysts were aware of it, much less the depths thereof."); SAC ¶¶ 377-86 (alleging that "Defendants failed to provide complete and accurate information about the risks of investing in AIG stock"), ¶¶ 378-79 (detailing categories of alleged "misleading statements and omissions"), ¶ 383 (listing SEC filings that allegedly contained "false, misleading, incomplete, and/or inaccurate information or omissions").

[11] *See Summers v. State St. Bank & Trust Co.*, 453 F.3d 404, 412 (7th Cir. 2006) (ERISA fiduciaries are not required to "outsmart[] the market"); *Rogers v. Baxter Int'l, Inc.*, 521 F.3d 702, 706 (7th Cir. 2008) (same).

5

the AIG Stock Fund.[12]  Those provisions in the Trust Agreements are immediately followed by a recitation of the prudent man standard of ERISA § 404: "In making such selection, [AIG] shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[13]  The Second Circuit construed a nearly identical provision in the Lehman plan, which gave the fiduciaries the power "to eliminate or curtail investment in Lehman Stock … if and to the extent that the Committee determines that such action is required in order to comply with the fiduciary duty rules" of ERISA § 404.  722 F.3d at 141.  The Second Circuit held that this language "does not equate to 'discretion' to divest from the [Lehman Stock Fund]" because it "simply ma[k]e[s] explicit" the limitation inherent in all plans by operation of law: that fiduciaries must "'follow plan terms *only to the extent that they are consistent with ERISA*,' thus ensuring that even plans affording zero discretion contain implicit legal limits."  *Id.* at 145-46 (quoting *Citigroup*, 662 F.3d at 139 (emphasis in *Lehman*)).[14]  As in *Lehman*, the Trust Agreement provisions here merely make explicit the otherwise-implicit legal requirement of compliance with ERISA, and do nothing to alter the fact

---

[12] Pls. Opp. at 9 (quoting SAC ¶ 96, 1993 ISP Trust Agreement § 2.1).

[13] Exs. 4 and 7 (1993 ISP Trust Agreement and December 31, 2002 Trust Agreement for AGC Plan) to Declaration of Erin M. Riley in Support of Plaintiffs' Oppositions to Motions to Dismiss, dated Jan. 31, 2013 (Doc. No. 179) (the "Riley Decl."), § 2.1 in each document.

[14] In ruling on Defendants' motions to dismiss the Consolidated Amended Complaint, the Court likewise relied on the Trust Agreements to hold that the Plans were ambiguous about whether the AIG Stock Fund was required – suggesting that, at a minimum, the Plans strongly favored the AIG Stock Fund.  AIG Reply at 9 (citing *In re AIG ERISA Litig. II*, 2011 WL 1226459, at *6).  Now, however, the Second Circuit has made clear that such provisions in no way preclude a finding that a plan requires or strongly favors investment in company stock.  *Lehman*, therefore, effectively removes the Trust Agreement provisions from the side of the equation that this Court previously saw as weighing against a finding that the Plans required the AIG Stock Fund, thereby providing further support to Defendants' argument that this Court's previous determination (that the Plans are "ambiguous") weighs in favor of applying the *Moench* presumption now.

that the Plans required, or at least strongly favored, the AIG Stock Fund.[15]  *See also* AIG Reply at 5-6, 9-10) (citing *In re Pfizer Inc. ERISA Litig.*, 2013 WL 1285175, at *6 (S.D.N.Y. Mar. 29, 2013)).

Second, *Lehman* supports Defendants' argument that, contrary to Plaintiffs' position, applying the *Moench* presumption is <u>not</u> limited solely to when a plan requires or strongly favors company stock.  *See* AIG Reply at 12 n.9 (noting that no "Second Circuit cases discussing the *Moench* presumption addressed the intermediate situation when a plan less than 'strongly favors' but more than simply permits, investment in company stock" and that *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995) "held that the presumption applies in that intermediate situation."). In *Lehman*, the Court explained that "*Citigroup* further endorsed the 'guiding principle' discussed by the Ninth Circuit in *Quan v. Computer Sciences Corp.*, 623 F.3d 870 (9th Cir. 2010), that 'judicial scrutiny should increase with the degree of discretion a plan gives its fiduciaries to invest.' *Citigroup*, 662 F.3d at 138 (quoting *Quan*, 623 F.3d at 883). 'Thus, a fiduciary's failure to divest from company stock is less likely to constitute an abuse of discretion if the plan's terms require—rather than merely permit—investment in company stock.' *Id.*" *Lehman*, 722 F.3d, at 145.  The Second Circuit's discussion in *Lehman* confirms that the application of the presumption is not limited to plans that require or strongly favor investment in company stock, but rather, extends to plans that more than "merely permit" that investment.  *See* AIG Reply at 12 n.9.

---

[15] As in the Lehman plan, immediately after the sentence Plaintiffs quote, the Trust Agreements recite the prudent man standard of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B): "In making such selection, [AIG] shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Exs. 4 and 7 (1993 ISP Trust Agreement and December 31, 2002 Trust Agreement for AGC Plan) to Declaration of Erin M. Riley in Support of Plaintiffs' Oppositions to Motions to Dismiss, dated Jan. 31, 2013 (Doc. No. 179) (the "Riley Decl."), § 2.1 in each document.

*Lehman* again confirmed this point in its discussion whether the presumption should be applied to the Lehman fiduciaries, explaining, "Plaintiffs argue that the *Moench* presumption is inapplicable (or, in the alternative, weak) because the Plan gives the Benefit Committee discretion to 'eliminate or curtail' investments in the LSF…. Were this the case, Plaintiffs would be correct that the *Moench* presumption should apply in limited form." *Lehman*, 737 F.3d at 145. The Second Circuit's recognition in *Lehman* that the *Moench* presumption can apply "in limited form" when a plan gives fiduciaries discretion to restrict investment in company stock is consistent with the sliding scale articulated in *Quan* and adopted in *Citigroup*, under which the level of "judicial scrutiny" varies directly with the level of "discretion" in the plan, but the presumption still applies (whether in full or limited form) whenever a plan does more than "merely permit" investment in company stock. *Citigroup*, 662 F.3d at 138. Indeed, this formulation of the presumption – not Plaintiffs' desired formulation – is consistent with how it was articulated in the seminal Third Circuit decision from which the presumption of prudence originated.[16] Thus, as Defendants argued in their motions to dismiss, even if this Court were to find that the Plans do not require or strongly favor investment in AIG stock, the *Moench* presumption still applies because the Plans certainly do more than "merely permit" such investment.

---

[16] *See Moench*, 62 F.3d at 571 (when a "fiduciary is not absolutely required to invest in employer securities but is more than simply permitted to make such investments … [the fiduciary] should not be subject to the strict scrutiny that would be exercised over a trustee only authorized to make a particular investment. Thus, a court should not undertake a de novo review of the fiduciary's actions…. Rather, the most logical result is that the fiduciary's decision to continue investing in employer securities should be reviewed for an abuse of discretion.").

8

B.    ***Lehman* Confirms That Under the *Moench* Presumption, Plaintiffs' Claims Must Be Dismissed**

*Lehman* confirms that under the "dire situation" standard required by the *Moench* presumption, Plaintiffs' claims here must be dismissed. In considering the allegations against the Lehman fiduciaries, the Court granted dismissal in part because, "[a]lthough Lehman's share price exhibited a downward trend overall during the spring and summer of 2008," even "in Lehman's final hours, the market arguably viewed the 158-year-old company as a going concern by assigning it a positive expected value" of "$3.65 per share at the close of business on Friday, September 12, 2008" (the last trading day before Lehman filed for bankruptcy). *Lehman*, 722 F.3d at 149. The Court held that this "above-water price immediately in advance of bankruptcy would not have put a prudent investor on notice that Lehman had reached a 'dire situation.'" *Id.* at 151. Similarly, AIG stock closed at an "above-water" price of $4.76 on Monday, September 15, 2008[17] – the day of Lehman's bankruptcy filing, after one of the most precipitous market declines in history, prompted by Lehman's filing, and the day before AIG received assistance from the federal government – confirming that just as in *Lehman*, Defendants here would not have been put on notice that AIG had reached a "dire situation." Moreover, the Second Circuit noted that "given that Bear Stearns was (effectively) bailed out by the government, the events of March 16, 2008 could be construed to cut against Plaintiffs' claims because the Benefit Committee Defendants may have believed that Lehman would be saved as well." *Lehman*, 722 F.3d at 150. The same logic applies to Defendants here.

*Lehman* also confirmed that neither "published articles and reports questioning [a company's] viability" nor the fact that company stock was "under-performing the market" is sufficient to "give rise to a plausible assertion that the [plan fiduciaries] knew or should have

---

[17] *See* Pappas Decl., Ex. F.

known that [the company] was in a 'dire situation.'" *Id.* at 151.  While the Second Circuit agreed that "Lehman's increasingly frequent write-downs of losses (and the media coverage thereof) should have given rise to concern[,]" the Court "still [could not] find that Plaintiffs plausibly alleged that the Benefit Committee Defendants knew or should have known that Lehman was an imprudent investment given the mixed signals with which the fiduciaries grappled throughout the class period." *Id.*  Likewise here, despite AIG's losses during the putative class period, the most sophisticated investors on Wall Street remained optimistic about AIG's future prospects, as evidenced by analyst reports with "buy" or "hold" recommendations, AIG's successful completion of a historically-large $20 billion capital raise in May 2008 and an additional $3 billion capital raise in August 2008, and a stock price of nearly $18 just days before AIG's sudden need for governmental assistance.  *See supra* at 3-5.  Given these signals, much like in *Lehman*, Plaintiffs' allegations here are wholly insufficient to show that Defendants knew or should have known that AIG stock was an imprudent investment.

## CONCLUSION

For the foregoing reasons, and for those set forth in Defendants' previous memoranda of law in support of their Motions to Dismiss the Consolidated Second Amended Complaint, Defendants respectfully request that this Court grant their Motions to Dismiss the Consolidated Second Amended Complaint in its entirety, and with prejudice.

Dated: New York, New York
September 20, 2013

        Respectfully submitted,

        /s/ Joseph S. Allerhand
        Joseph S. Allerhand
        joseph.allerhand@weil.com
        Nicholas J. Pappas
        nicholas.pappas@weil.com
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

*Counsel for American International Group, Inc., Edward Bacon, Joseph Cella, Robert Cole, John Q. Doyle, Georgia Feigel, David Fields, Anthony Galioto, Howard Greene, Richard Grosiak, David Junius, Andrew Kaslow, Gary Reddick, Charles Schader, Stephen Schoepke, Kathleen Shannon, Robert Thomas, Edmund S.W. Tse, and Thomas Wright*

        /s/ Michael J. Garvey
        Paul C. Curnin
        pcurnin@stblaw.com
        Michael J. Garvey
        mgarvey@stblaw.com
        Craig S. Waldman
        cwaldman@stblaw.com
        SIMPSON, THACHER & BARTLETT LLP
        425 Lexington Avenue
        New York, New York 10017
        Telephone: (212) 455-2000
        Facsimile: (212) 455-2502

*Counsel for Robert B. Willumstad*

<u>/s/ Richard J. Rabin</u>
Richard J. Rabin
rrabin@akingump.com
Jamison A. Diehl
jdiehl@akingump.com
AKIN GUMP STRAUSS HAUER &
FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for Martin J. Sullivan*
