UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. ERISA LITIGATION II<br><br>This Document Relates To:<br>All Actions | MASTER FILE<br>08 Civ. 5722 (LTS)(DCF)<br><br>ECF Case<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants[1] respectfully submit this Response to Plaintiffs' Notice of Supplemental Authority (Doc. No. 213) (the "Notice") regarding *In re Fannie Mae 2008 ERISA Litig.*, 2014 U.S. Dist. LEXIS 55682 (S.D.N.Y. Apr. 21, 2014) ("*Fannie Mae II*"), in which Judge Paul A. Crotty declined to reconsider his earlier opinion denying the defendants' motions to dismiss. *See In re Fannie Mae 2008 ERISA Litig.*, 2012 WL 5198463 (S.D.N.Y. Oct. 22, 2012) ("*Fannie Mae I*").

Plaintiffs argue that *Fannie Mae II* provides two separate grounds to validate their theory that the Second Circuit's decision in *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013) ("*Lehman*") "does not support dismissal here." Notice at 2. First, Plaintiffs contend that *Fannie Mae II* indicates that, notwithstanding *Lehman*, the fiduciaries here were required to act upon inside information. And second, Plaintiffs argue that *Fannie Mae II* supports their contention that their allegations are sufficient to overcome the *Moench* presumption. Plaintiffs are wrong on both counts.

---

[1] "Defendants" are: American International Group, Inc. ("AIG"), Edward Bacon, Joseph Cella, Robert Cole, John Q. Doyle, Georgia Feigel, David Fields, Anthony Galioto, Howard Greene, Richard Grosiak, David Junius, Andrew Kaslow, Gary Reddick, Charles Schader, Stephen Schoepke, Kathleen Shannon, Martin J. Sullivan, Robert Thomas, Edmund S.W. Tse, Robert B. Willumstad, and Thomas Wright.

I.      *Fannie Mae II* **Does Not (And Cannot) Establish That, Contrary To** *Lehman*, **Fiduciaries Are Required To "Act Upon" Inside Information**

Plaintiffs are wrong that *Fannie Mae II* establishes that ERISA plan fiduciaries in possession of non-public information can take (and "be held responsible for failing" to take) a "variety of steps" to protect the plan without violating the securities laws.  *See* Notice at 2-3. Plaintiffs offer no basis for this Court to disregard *Lehman's* holding that ERISA plan fiduciaries are "under no obligation to seek out *or act upon* inside information[.]" *Lehman*, 722 F.3d at 147 (emphasis added).  Moreover, in making their argument, Plaintiffs ignore a crucial distinction. In *Fannie Mae II*, Judge Crotty distinguished *Lehman* and held that the plaintiffs sufficiently alleged that the fiduciaries knew or should have known that Fannie Mae stock was an imprudent plan investment based on *publicly available information alone*.  *Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *23 (explaining that because the "publicly disclosed" information was "sufficient to show … knowledge of … dire circumstances," *Lehman's* holding was "not dispositive").  In contrast, Defendants here moved to dismiss based on *Lehman* because Plaintiffs' prudence claim hinges on the now discredited theory that the fiduciaries knew or should have known that AIG stock was an imprudent investment based on *non-public* information.[2]  As a result, *Fannie Mae II* is factually inapposite to this case.  Indeed, Judge Crotty confirmed in *Fannie Mae II* that his statements in *Fannie Mae I* about the "variety of steps" that fiduciaries supposedly may take based on non-public information were mere dicta, and pre-*Lehman* dicta at best.[3]

---

[2] *See* Consolidated Second Amended Complaint ¶¶ 387-379 (listing allegations of non-public information, spanning 19 single-spaced pages, that supposedly should have caused the fiduciaries to act); *see also* Defendants' Supplemental Memorandum of Law in Further Support of Motions to Dismiss the Consolidated Second Amended Complaint (the "Suppl. Mem.") (Doc. No. 204) at 3.

[3] *Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *23 (clarifying that "the Court did not premise its holding" on the "variety of steps" the fiduciaries could have taken based on non-public information, because the Court "independently held" that the "publicly disclosed" information was sufficient to establish knowledge of "dire circumstances").

2

Not only are Plaintiffs wrong in arguing that *Fannie Mae II* shows that *Lehman* "does not support dismissal here," but *Fannie Mae II* confirms Defendants' argument that *Lehman's* holding that fiduciaries are not required to "act upon" inside information applies regardless of whether the fiduciaries are entitled to the *Moench* presumption.  In *Fannie Mae II*, Judge Crotty recognized that in *Lehman*, the Second Circuit held that the plaintiffs could not premise their prudence claim on inside information "[b]efore applying the *Moench* presumption" – directly contradicting Plaintiffs' prior assertion that "*Lehman* expressly limited its discussion of insider information as being 'implicated by [the Moench presumption's] application.'"[4] *Fannie Mae II*, 2014 U.S. Dist. LEXIS at *17.

## II. *Fannie Mae II* Does Not Establish That Plaintiffs' Allegations Here Are Sufficient To Rebut The *Moench* Presumption

*Fannie Mae II* does not, as Plaintiffs contend, show that their allegations here are sufficient to rebut the *Moench* presumption.  In *Fannie Mae II*, Judge Crotty reaffirmed the distinction he drew in *Fannie Mae I* between "[b]anks like Lehman" (or Citigroup or JP Morgan, the examples cited in *Fannie Mae I*) that "'had only a portion of their assets in housing related sectors,'" and Fannie Mae, which had "*all* of [its] assets … in the housing market.'" *Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *26 (quoting *Fannie Mae I*, 2012 WL 5198463, at *5 n.10) (emphasis added).  This distinction is critical to determining whether the *Moench* presumption has been overcome because only facts that would have "compelled" a reasonable fiduciary to conclude that the company is in a "dire situation" are sufficient to rebut the presumption of prudence.  *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140-41 (2d Cir. 2011).  As Judge Crotty explained, whereas "Lehman's diversification of its investments gave its fiduciaries reason to believe that Lehman might weather the financial storm," Fannie Mae's complete concentration on the housing market during a "housing crisis … made it nearly certain that Fannie Mae could

---

[4] Plaintiffs' Opposition to Defendants' Supplemental Memorandum of Law in Further Support of Defendants' Motions to Dismiss (Doc. No. 207) (the "Suppl. Opp.") at 4-5 (alterations in Suppl. Opp.).

not." *Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *26-27. As Defendants previously argued, "AIG—unlike Fannie Mae—was one of the largest, most diversified companies in the world, rendering Plaintiffs' reliance on a case in which the company's assets were in only one industry sector misplaced." AIG's Reply Memorandum of Law in Further Support of Motion to Dismiss the Consolidated Second Amended Complaint (Doc. No. 192) (the "AIG Reply") at 18. Thus, the key factor upon which Judge Crotty relied in finding that the *Moench* presumption was overcome in the *Fannie Mae* decisions does not apply to AIG. Indeed, the *Fannie Mae* decisions stand for the proposition that AIG's diversification—just like that of Lehman, Citigroup and JP Morgan—weighs strongly *against* a finding that Defendants knew or should have known that AIG was in dire circumstances.

Plaintiffs also wrongly contend that *Fannie Mae II* rejected the argument Defendants purportedly made here that AIG's "above-water" stock price, by itself, defeats Plaintiffs' prudence claim. Notice at 3 (quoting *Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *24). Judge Crotty held that stock price *is* relevant, "in the context of all signals indicating whether the defendants knew that dire circumstances existed." *Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *26. And that is precisely what Defendants here argued: AIG's stock price of $18 per share a matter of days before AIG's sudden need for governmental assistance, combined with a host of other positive public signals about AIG's financial condition—including, for example, analyst reports with "buy" or "hold" recommendations, the successful completion of a $20 billion capital raise in May 2008, and the successful completion of an additional $3 billion capital raise in August 2008—confirm that the market remained positive about AIG's prospects.[5] The numerous signs of AIG's financial well-being were, at a minimum, the very "mixed signals" that doom an ERISA prudence claim under *Lehman*, and that Judge Crotty

---

[5] *See* Suppl. Mem. at 9-10; Defendants' Supplemental Reply Memorandum of Law in Further Support of Motions to Dismiss the Consolidated Second Amended Complaint (the "Suppl. Reply") (Doc. No. 209) at 3-5.

found to be lacking with respect to Fannie Mae.  *See Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *25.

Plaintiffs also assert that "the *Fannie Mae* court emphasized that ERISA plan fiduciaries must consider any shift in the employer company's risk profile which was unforeseen by the plan settlor in determining whether dire circumstances arose."  Notice at 3-4 (citing *Fannie Mae II*, 2014 U.S. Dist. LEXIS 55682, at *27).  But as Defendants previously explained, under controlling Second Circuit law, the critical inquiry with respect to foreseeability concerns the plan *fiduciaries*, not the plan settlor, and asks whether the fiduciaries reasonably could have, at the time of the investment decision at issue, foreseen "the outcome that followed."  *See* AIG Reply at 2, 13-14 (quoting *Citigroup*, 662 F.3d at 140 and collecting cases).

Finally, Plaintiffs note that *Fannie Mae II* "reaffirmed" that the *Moench* presumption can be rebutted by allegations of "publicly disclosed information" establishing the employer company's "dire circumstances[.]"  Notice at 2.  But Defendants never argued otherwise.  Rather, Defendants argued that under *Lehman*, Plaintiffs cannot rely on *non-public* information to establish that the fiduciaries breached the duty of prudence.  And the public information about AIG—which is all that Plaintiffs are permitted to rely upon, post-*Lehman*, to support their prudence claim—shows that the market viewed AIG not as a company in dire circumstances, but rather, as a "sound investment."  *See* Suppl. Mem. at 1, 3-4.

Dated: New York, New York
May 27, 2014

                    Respectfully submitted,

/s/ Joseph S. Allerhand
Joseph S. Allerhand
joseph.allerhand@weil.com
Nicholas J. Pappas
nicholas.pappas@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Counsel for American International Group, Inc., Edward Bacon, Joseph Cella, Robert Cole, John Q. Doyle, Georgia Feigel, David Fields, Anthony Galioto, Howard Greene, Richard Grosiak, David Junius, Andrew Kaslow, Gary Reddick, Charles Schader, Stephen Schoepke, Kathleen Shannon, Robert Thomas, Edmund S.W. Tse, and Thomas Wright*


/s/ Michael J. Garvey
Paul C. Curnin
pcurnin@stblaw.com
Michael J. Garvey
mgarvey@stblaw.com
Craig S. Waldman
cwaldman@stblaw.com
SIMPSON, THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Counsel for Robert B. Willumstad*


/s/ Richard J. Rabin
Richard J. Rabin
rrabin@akingump.com
Jamison A. Diehl
jdiehl@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for Martin J. Sullivan*