UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. ERISA LITIGATION II | : <br> : <br> : |
| This Document Relates To: | :    Master File No.: 08-CV-5722 (LTS) (DCF) <br> : |
| All Actions | : <br> : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND
<u>CERTIFICATION OF SETTLEMENT CLASS</u>**

Robert I. Harwood
Tanya Korkhov
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY  10022
Telephone: (212) 935-7400

**Co-Lead Counsel**

Lee Squitieri
SQUITIERI & FEARON, LLP
32 East 57th Street, 12th Floor
New York, NY  10022
Telephone: (212) 421-6492

**Co-Lead Counsel**

Marian P. Rosner
Andrew E. Lencyk
WOLF POPPER LLP
845 Third Avenue
New York, NY  10022
Telephone: (212) 759-4600

**Co-Lead Counsel**

Lynn Lincoln Sarko
Erin M. Riley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900

**Co-Lead Counsel**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

I.   INTRODUCTION ......................................................................................1

II.  BACKGROUND OF THE SETTLEMENT ...............................................2

    A.   Procedural Background.......................................................................2

    B.   Settlement Negotiations .....................................................................3

    C.   The Settlement Terms ........................................................................4

    D.   Preliminary Approval and Notice to the Class ...................................4

III. THE SETTLEMENT SATISFIES THE STANDARDS FOR APPROVAL .....................5

    A.   The Governing Law Favors and Encourages Settlements .......................5

    B.   The Proposed Settlement Meets the *Grinnell* Factors .............................6

        1.   Factor one: the complexity, expense, and likely duration of the litigation...............................................7

        2.   Factor two: the reaction of the Class to the Settlement.............................................................8

        3.   Factor three: the stage of the proceedings and discovery completed.......................................9

        4.   Factor four: the risk of establishing liability...........................10

        5.   Factor five: the risks of establishing damages ...........................11

        6.   Factor six: the risks of maintaining the class action through trial.......................................13

        7.   Factor seven:  Defendants' ability to withstand a greater judgment..................................14

        8.   Factors eight and nine: the reasonableness of the Settlement in light of the best possible recovery and attendant risks of litigation ............................15

i

IV.     THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED ...........................17

V.      THE PLAN OF ALLOCATION SHOULD BE APPROVED .........................................19

VI.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE....................20

        A.      Plaintiffs Satisfy All Prerequisites for Class Certification ....................................21

                1.      Numerosity........................................................................................................21

                2.      Commonality....................................................................................................21

                3.      Typicality .........................................................................................................22

                4.      Adequacy .........................................................................................................23

        B.      The Class May be Properly Certified Under Rule 23(b)(1)...................................23

        C.      Plaintiffs' Counsel Should Be Appointed Co-Lead Class Counsel ......................24

VII.    CONCLUSION.........................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**      **Page**

*Banyai v. Mazur*,
   205 F.R.D. 160 (S.D.N.Y. 2002) ..................................................................... 21

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).................................................................. 6, 7, 14, 15

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................... *passim*

*Cromer Fin. Ltd. v. Berger*,
   205 F.R.D. 113 (S.D.N.Y. 2001) ..................................................................... 23

*Donovan v. Bierwirth*,
   754 F.2d 1049 (2d Cir. 1985)........................................................................... 11

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 822 (2013)......................................................................................... 3

*Fifth Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014).......................................................................... 3, 11, 12

*Gedek v. Perez*,
   2014 WL 7174249 (W.D.N.Y. Dec. 17, 2014) ............................................... 11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................. 20

*In re Beacon Assoc. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ..................................................................... 13

*In re Citigroup ERISA Litig.*,
   662 F.3d 128 (2d Cir. 2011)....................................................................... 10, 11

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992)............................................................................ 23

*In re Global Crossing Sec. & ERISA Litig.*
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................. passim

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   191 F.R.D. 457 (E.D. Penn. 2000)............................................................ 12, 24

iii

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2015 U.S. Dist. LEXIS 90109 (S.D.N.Y. July 10, 2015) .................................................. 11

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................... *passim*

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................ 23

*In re PaineWebber Ltd. P'ship Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................ 15

*In re Puda Coal Secs. Litig.*,
    2013 WL 543007 (S.D.N.Y. Oct. 1, 2013) ................................................................ 21

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................................ 21

*In re WorldCom, Inc. ERISA Litig.*,
    2004 U.S. Dist. LEXIS 19786 (S.D.N.Y. Oct. 4, 2004) ........................................... 22

*In re WorldCom, Inc. ERISA Litig.*,
    2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004) ........................................... 7

*Johnson v. Brennan*,
    2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .......................................................... 10

*Koch v. Dwyer*,
    2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 22, 2001) ........................................... 22

*La Rue v. DeWolff*,
    128 S. Ct. 1020 (2008) .............................................................................................. 11

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .......................................................................................21

*Masters v. Wilhemina Modeling Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007)........................................................................................17

*Moore v. Simpson*,
    1997 U.S. Dist. LEXIS 13791 (N.D. Ill. Sept. 5, 1997) ........................................... 22

*Rinehart v. Akers*,
    722 F.3d 137 (2d Cir. 2013)................................................................................. 3, 11

*Seekamp v. It's Huge, Inc.,*
    2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ...................................................... 24

*Shapiro v. JP Morgan Chase & Co.,*
    2014 WL 1224555 (S.D.N.Y. Mar. 24, 2014) .................................... 13, 14, 15, 17

*Spann v. AOL Time Warner, Inc.,*
    2005 WL 1339837 (S.D.N.Y. June 7, 2005) ....................................................... 5

*Taveras v. UBS AG,*
    708 F.3d 436 (2d Cir. 2012)............................................................................ 11

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)  ................................... 9

*Tittle v. Enron.,*
    228 F.R.D. 541 (S.D. Tex. 2005) .....................................................................17

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)......................................................................... *passim*

## Statutes

29 U.S.C. § 1109(a) ................................................................................................ 22

29 U.S.C. § 1132(a)(2)............................................................................................ 13

Fed. R. Civ. P. 12(b)(6)........................................................................................3, 7

Fed. R. Civ. P. 23 .................................................................................................. 13

Fed. R. Civ. P. 23(a) .............................................................................................. 20

Fed. R. Civ. P. 23(a)(2).......................................................................................... 21

Fed. R. Civ. P. 23(b)(1).............................................................................. 1, 4, 20, 23

Fed. R. Civ. P. 23(b)(1)(B) .................................................................................... 24

Fed. R. Civ. P. 23(e) ............................................................................................... 5

Fed. R. Civ. P. 23(g)(1)........................................................................................... 24

**<u>Other Authorities</u>**

4 Alba Conte & Herbert Newberg,
  *Newberg on Class Actions* § 11:45 (4th ed. 2002).......................................................5

James Moore, *et al.*,
  *Moore's Federal Practice* § 30.42 (3d ed. 1995) .......................................................5

## I.   INTRODUCTION

Plaintiffs Kevin R. Hoffman, Walter Earl Lewis, Mark Ludwig, Grace Baxter, and Thomas L. West, Jr. ("Plaintiffs")[1] respectfully submit this memorandum of law in support of their unopposed motion for an Order: (a) granting final approval of the Settlement; (b) granting final approval of the Plan of Allocation; (c) certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1); and (d) appointing the law firms of Harwood Feffer LLP, Wolf Popper LLP, Keller Rohrback L.L.P., and Squitieri & Fearon, LLP (collectively, "Plaintiffs' Counsel") as Co-Lead Class Counsel.[2]

The Settlement provides for a $40 million cash distribution to the Settlement Class (less Court-approved fees, expenses, and case contribution awards to the Named Plaintiffs), and resolves all claims against Defendants, while removing the risks and delays associated with further litigation.  The Parties agreed to the Settlement after nearly seven years of hard-fought litigation, including vigorous motion practice, comprehensive discovery, and extensive arm's-length negotiations, including two, in-person mediation sessions conducted by former United States District Court Judge Layn R. Phillips, an experienced and highly respected mediator.

On June 5, 2015, this Court issued an Order preliminarily approving the Settlement and certifying the Settlement Class (the "Preliminary Approval Order"), Docket No. 256.  As part of that Order, the Court preliminarily found that "(a) the proposed Settlement resulted from

---

[1]     Except as indicated, capitalized terms used herein shall have the meanings ascribed to them in the Settlement Agreement, annexed as Exhibit 1 to the Joint Declaration of Co-Lead Class Counsel In Support of Plaintiffs' Motions (1) For Final Approval of Settlement and Plan of Allocation; and Certification of Settlement Class; and (2) An Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards (the "Joint Declaration" or "Joint Decl.").

[2]     Plaintiffs file the instant memorandum contemporaneously with the Memorandum in Support of Their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards to the Named Plaintiffs ("Fee Memorandum"), which is incorporated in full herein.

informed, extensive arm's length negotiations including two in-person mediations before the Honorable Layn R. Phillips (Ret.); (b) Class Counsel has concluded that the proposed Settlement is fair, reasonable, and adequate; and (c) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class." *Id.* at 4. Plaintiffs and their counsel believe each of the findings in the Preliminary Approval Order should be made final because the Settlement is an excellent result for the Settlement Class.

In accordance with the notice plan provided in the Preliminary Approval Order, the Settlement Class has received full and fair notice of the Settlement through individualized direct mail. Summary notice was also published in the national edition of *The Wall Street Journal*. Both notices identified a Settlement website and a toll-free phone number. Defendants advise that AIG mailed the Class Action Fairness Act ("CAFA") notices on May 4, 2015 to the requisite officials pursuant to the CAFA statute. To date, there have been no objections to the Settlement.[3] The absence of objections is a strong endorsement of the merits of the Settlement.

Plaintiffs also submit that the Court should give final approval to the proposed Plan of Allocation because it is a fair, reasonable, and adequate means to distribute the Settlement proceeds, that certification of the Settlement Class is appropriate under Rule 23(b)(1), and that Plaintiffs' Counsel should be appointed Co-Lead Class Counsel pursuant to Rule 23(g)(1).

## II.   BACKGROUND OF THE SETTLEMENT

### A.   Procedural Background

The factual background of this consolidated action (the "Action"), including its procedural history, as well as the extensive motion briefing and discovery conducted by the

---

[3]     In accordance with the schedule established by this Court, the date for filing objections is August 28, 2015. Preliminary Approval Order at 7. If any objections are filed, Plaintiffs' Counsel will address them in a supplemental filing with this Court no later than September 4, 2015. *Id.* at 8-9.

Parties prior to reaching the Settlement, is set forth in the Joint Declaration at Section II, and discussed at length in Section II of the memorandum of law submitted in support of Plaintiffs' motion for preliminary approval of the Settlement and related relief (Docket No. 254). Plaintiffs' Counsel summarize below their settlement efforts in this Action.

### B.     Settlement Negotiations

On August 21, 2013, the Parties participated in the first of two, in-person mediation sessions before Judge Phillips.  In advance of that session, the Parties submitted extensive, written confidential memoranda.  During the initial mediation session, the Parties made formal presentations and engaged in spirited debate as to critical legal and factual issues concerning liability and damages.  The Parties concluded discussions that day far apart in their respective positions and returned to a litigation posture.  The discussions were complicated by the Second Circuit's then-recent decision in *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), which led to further briefing.  Later, mediation efforts were largely stalled by the Supreme Court's December 2013 granting of *certiorari* in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 822 (2013).

It was only after this Court denied Defendants' renewed motions to dismiss, without prejudice, and the direction to the Parties to address the impact of the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), that the Parties resumed their settlement discussions.  The Parties conducted their second in-person mediation session before Judge Phillips on November 12, 2014, more than a year after the initial mediation after submitting additional confidential memoranda to Judge Phillips.  The November 2014 mediation was also not immediately successful.  Defendants indicated they intended to renew their Rule 12(b)(6) motions.  Plaintiffs declared their intent to amend their complaint.  On December 19, 2014, Plaintiffs filed their Third Consolidated Amended Complaint (the "Complaint") and the

parties agreed to a new round of briefing.   Meanwhile, settlement negotiations continued telephonically with the assistance of Judge Phillips, which ultimately resulted in this proposed Settlement.   In early January 2015, the Parties agreed in principle to settle the Action, and informed the Court of the Settlement by letter dated January 6, 2015.   On April 23, 2015, Plaintiffs moved for preliminary approval of the Settlement and related relief (amended motion for preliminary approval was filed on June 1, 2015).

C.     The Settlement Terms

The Parties have agreed to settle all claims asserted by Plaintiffs in this Action for the $40 million in cash on behalf of a class of participants and beneficiaries in two 401(k) plans sponsored by AIG during the Class Period, namely, the American International Group, Inc. Incentive Savings Plan and the American General Agents' and Managers' Thrift Plan (collectively, the "Plans").   *See* Settlement Agreement § VII.7.1.2.   The Settlement further provides that the Net Proceeds of the Settlement will be distributed pursuant to a Plan of Allocation.   Exhibit 3 to Settlement Agreement (Docket No. 255); Joint Decl., Exhibit 1.   The Settlement Agreement also contemplates certification of a Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1).   *See* Settlement Agreement § I.1.46.   In exchange for the Settlement Fund, Plaintiffs, on behalf of the Plans and the Settlement Class, have agreed to release their claims against the Defendants.   *Id.* § III.3.1-5.

D.     Preliminary Approval and Notice To The Class

On June 5, 2015, this Court, *inter alia*, preliminarily approved the Settlement and certified the Settlement Class.   Preliminary Approval Order at 3-4.   The Preliminary Approval Order also set forth the notice procedures and a schedule for disseminating notice of the Settlement (the "Class Notice").   *See id.* at 5-6.   In accordance with the Preliminary Approval

Order, Class Notice has been provided to the Settlement Class, advising of, *inter alia*, the Settlement, the Plan of Allocation, the request for attorneys' fees, reimbursement of expenses, and case contribution awards, the procedures and deadlines for objections, the date of the Fairness Hearing, and providing contact information for those with further inquiries. *See* Affidavit of Michael Rosenbaum Regarding Mailing and Publication of Notice ("Rosenbaum Affidavit"), annexed to the Joint Declaration as Exhibit 2, ¶ 6.

## III.   THE SETTLEMENT SATISFIES THE STANDARD FOR APPROVAL

### A.   The Governing Law Favors and Encourages Settlements

Plaintiffs present this Settlement for review under Fed. R. Civ. P. 23(e), requiring Court approval of Class settlements, the issuance of notice in a reasonable manner to Class members, and a finding by the Court, following a hearing, that the Settlement is "fair, reasonable, and adequate." *Id.* For the reasons discussed below, final approval of the Settlement is appropriate.

Strong judicial policy favors resolving litigation prior to trial, particularly in class actions. *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.* ("*Wal-Mart*"), 396 F.3d 96, 116 (2d Cir. 2005). "There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992). Because settlement is a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement. James Moore, *et al.*, *Moore's Federal Practice* § 30.42 (3d ed. 1995).

The standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other circuits, is whether that settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also Wal-Mart*, 396 F.3d at 116; *Spann v. AOL Time Warner, Inc.*, 2005 WL 1339837, at *9 (S.D.N.Y. June 7, 2005). As one court in this District explained, "[i]n a class

5

action settlement, there is a presumption of fairness, reasonableness and adequacy when the settlement is the product of 'arms-length negotiations between experienced, capable counsel after meaningful discovery.'" *In re Marsh ERISA Litig.* ("*Marsh*"), 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).

As discussed herein and in the Joint Declaration, there is little doubt about the fairness, reasonableness, and adequacy of this Settlement, given the arm's-length nature of the negotiations conducted by experienced counsel for the Parties and presided over by a well-respected mediator,[4] following almost seven years of vigorous litigation and completion of Plaintiffs' considerable fact discovery. Joint Decl. ¶¶ 4,7. Accordingly, Plaintiffs respectfully submit that the "presumption of fairness" articulated by the *Marsh* court is warranted here.

### B.   The Proposed Settlement Meets the *Grinnell* Factors

An analysis of the Settlement in light of the factors set forth in *City of Detroit v. Grinnell Corp.* ("*Grinnell*"), 495 F.2d 448, 463 (2d Cir. 1974), further supports the conclusion that the Settlement is fair, reasonable, and adequate, and should be approved. *See, e.g., Wal-Mart*, 396 F.3d at 117 ("In this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'"). The *Grinnell* factors are: (1) the litigation's complexity, expense and likely duration; (2) the class reaction to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the defendants' ability to withstand a greater judgment; (8) the settlement fund's range of reasonableness in light of the best possible recovery; and (9) the settlement fund's range of

---

[4]      Judge Phillips also presided over the settlement of the companion action brought under the federal securities laws, *In re American International Group, Inc., 2008 Sec. Litig.*, No. 08-CV-4722 (LTS) (S.D.N.Y.) ("Securities Action"), as well as numerous other ERISA breach of fiduciary duty actions.

reasonableness in light of all the attendant litigation risks.  *Grinnell*, 495 F.2d at 463 (citations omitted).  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *Marsh*, 265 F.R.D. at 138 (quoting *In re Global Crossing Sec. & ERISA Litig.* ("*Global Crossing*"), 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

### 1.      Factor one: the complexity, expense, and likely duration of the litigation

"This factor captures the probable costs, in both time and money, of continued litigation." *City of Providence v. Aeropostale*, *Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014).  As the *Marsh* court noted, "[m]any courts have recognized the complexity of ERISA breach of fiduciary duty company stock claims," such as those asserted here.  265 F.R.D. at 138.  Indeed, in a proposed settlement of an analogous ERISA action, there is a "general risk inherent in litigating complex claims such as these to their conclusion."  *In re WorldCom, Inc. ERISA Litig.*, 2004 U.S. Dist. LEXIS 20671, at *25 (S.D.N.Y. Oct. 18, 2004) (approving settlement).[5]

This case is no exception.  Although this Action commenced over seven years ago, and Plaintiffs have already expended considerable efforts pursuing their allegations through Defendants' numerous motions to dismiss and completion of Plaintiffs' fact discovery, there is no doubt that, in the absence of the Settlement, significant litigation lay ahead.  Prior to agreeing to the Settlement, Defendants indicated their intent to renew their 12(b)(6) motions.  Joint Decl. ¶ 20.  While Plaintiffs believe that they would be successful in opposing these motions, success

---

[5]      Similarly, in *Global Crossing*, 225 F.R.D. 456, Judge Lynch explained:

The ERISA cases would pose additional factual and legal issues.  Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [company] business practices would be issues for proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved.  These uncertainties would substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval.

was not assured, and they faced a contested class certification motion and summary judgment motions.  In addition, Plaintiffs' claims raise numerous complex legal and factual issues under ERISA which, absent the Settlement, would require extensive expert discovery and testimony regarding fiduciary liability, damages, and other important issues.  As in any complex case, it would be costly and time-consuming to complete the expert discovery to prepare the case for trial.  Thus, this Settlement conserves judicial resources and reduces the time and expense associated with further litigation, including further pleading motions, class certification briefing and discovery, expert discovery, and trial preparation.[6]

### 2.    Factor two: the reaction of the Class to the Settlement

As one court in this District has noted, "[t]he reaction of the [c]lass to the [s]ettlement is a significant factor in assessing its fairness and adequacy and the absence of any objections may itself be taken as evidencing the fairness of a settlement."  *City of Providence*, 2014 WL 1883494, at *5; *see also Wal-Mart*, 396 F.3d at 118 ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citation omitted).

Class Notice was sent to 25,159 Class members, published in a national newspaper, and posted online.  Despite the wide dissemination of the Class Notice, thus far, no objections have been received.  This factor thus strongly supports the Settlement.  *See*, *e.g.*, *Marsh*, 265 F.R.D. at

---

[6]     This Action also raised numerous complex issues concerning the continued offering of AIG stock as a Plan investment option.  Moreover, Defendants raised issues as to the start of the Class Period.  All of this was further complicated by the fact that the law continued to change throughout the pendency of the litigation.  Here, the immediate, guaranteed benefit provided by the Settlement, versus the uncertainty of continued, costly, and time-consuming litigation, supports approving the Settlement.  *See*, *e.g.*, *Marsh*, 265 F.R.D. at 138-39 ("This [s]ettlement cuts short the costly and time-consuming expert discovery that remains, and eliminates the time and expense of the substantial additional briefing that undoubtedly would occur going forward.  Even if the [c]lass were to win a judgment at trial, the additional delay of trial, post-trial motions and appeals could deny the [c]lass any actual recovery for years, further reducing its value.").

139 ("There has not been a single objection to the amount of the [s]ettlement, to any of its terms, or to the adequacy of the [n]otice or [p]ublication [n]otice.  The lack of any objections from [c]lass members is an extremely strong indication that the [s]ettlement is fair.").

### 3.   Factor three: the stage of the proceedings and discovery completed

In considering this third *Grinnell* factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiff's causes of action for purposes of settlement."  *City of Providence*, 2014 WL 1883494, at *6.  The *City of Providence* court explained that to satisfy this factor, "parties need not have even engaged in formal or extensive discovery."  *Id*.  However, as discussed herein and in the Joint Declaration, Plaintiffs' discovery efforts in this Action were substantial (with fact discovery completed), and are more than adequate to satisfy this factor.

When the Parties agreed to the proposed Settlement, Plaintiffs' Counsel's discovery efforts included: reviewing over 30 million pages of documents produced in this Action and the Securities Action; taking over 20 depositions; questioning additional witnesses in 44 more depositions in the Securities Action; engaging in other document and interrogatory discovery; and analyzing damages studies performed by their consultants.  *See* Joint Decl. ¶ 21. Accordingly, Plaintiffs have developed a comprehensive understanding of the key legal issues raised in this Action based on, *inter alia*, the extensive briefing and discovery conducted to date.

Further, having completed fact discovery, litigated two rounds of dispositive motions, and mediated for over a year, the Parties have "a clear view of the strengths and weaknesses of their cases," and are well aware of the range of possible outcomes at trial. *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd*., 2004 U.S. Dist. LEXIS 8608, at *10 (S.D.N.Y. May 14, 2004) (citation

omitted) (internal quotation marks omitted).   As such, Plaintiffs' extensive litigation efforts satisfy this factor.  *See*, *e.g.*, *Wal-Mart*, 396 F.3d at 118 ("Here plaintiffs entered into settlement only after a thorough understanding of their case.  Extensive discovery proceedings spanning over seven years and millions of pages of documents preceded the Settlement.").

### 4.      Factor four: the risk of establishing liability

Perhaps the most important factors in any assessment of the fairness and adequacy of a proposed settlement are "the risks of establishing liability" and the "risks of establishing damages," the fourth and fifth *Grinnell* factors.  *Grinnell*, 495 F.2d at 463.  "In weighing the risks of establishing liability and damages, the Court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *Johnson v. Brennan*, 2011 WL 4357376, at *10 (S.D.N.Y. Sept. 16, 2011).  Accordingly, in assessing the Settlement, the Court should balance the benefits afforded the Settlement Class, including the immediacy and certainty of a recovery, against the continuing litigation risks.  *See Grinnell*, 495 F.2d at 463.

 ERISA company stock breach-of-fiduciary-duty actions are recognized as a particularly complex and relatively novel area of the law.  As the *Marsh* court reasoned, "[c]ontributing to [p]laintiffs' risk [of establishing liability] is the fact that ERISA company stock cases involving 401(k) plans are quite new—the pioneering cases in this field were not filed until the late 1990s. The results in these cases have been decidedly mixed."  *Marsh*, 265 F.R.D. at 140.  Indeed, the ERISA claims such as those asserted by Plaintiffs here, implicate "a rapidly developing, and somewhat esoteric, area of law."  *Global Crossing*, 225 F.R.D. at 459 n.13.  For example, since this Action commenced, the Second Circuit adopted a presumption of prudent investment for defined contribution plan fiduciaries, *see In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011), subsequently clarifying that the presumption only applied to plans *requiring* a company

stock fund.  *See Taveras v. UBS AG*, 708 F.3d 436 (2d Cir. 2012); *Rinehart, supra* (addressing ERISA claims concerning, *e.g.*, non-public information).  In *Dudenhoeffer*, the Supreme Court abrogated the Second Circuit precedent.  *Id*. at 134 S. Ct. 2467.  And even though *Dudenhoeffer* eliminated the need to plead a "dire situation" attendant to a prudence presumption (*id*.), it left substantially open for interpretation what suffices to plead a fiduciary duty violation.  *Dudenhoeffer* is only beginning to be interpreted by the district courts.[7]

Plaintiffs assert that the Plans' fiduciaries failed to properly protect the participants from losses to their retirement investments.  Defendants have raised a number of defenses, each of which will need to be overcome in this Action.  While Plaintiffs are confident in their ability ultimately to prove the claims they assert, the Settlement is in the best interest of the Settlement Class because the immediate benefits of the Settlement far outweigh the risks of the case being lost or its value diminished on a pre-trial motion or at trial.  *See*, *e.g.*, *Global Crossing*, 225 F.R.D. at 459 n.13 (finding that significant legal and factual obstacles to proving plaintiff's case, viewed against substantial and certain benefits of settlement, supported settlement approval).

### 5. Factor five: the risks of establishing damages

Plaintiffs would face additional challenges in establishing and quantifying damages.  The risk in proving damages under *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985),[8] resides primarily in the complexity of the computer- and expert-intensive calculation, requiring a

---

[7]    *Compare*, *e.g.*, *Gedek v. Perez*, 2014 WL 7174249 (W.D.N.Y. Dec. 17, 2014) (upholding claims post-*Dudenhoeffer*) with *In re Citigroup ERISA Litig.*, 11-7672 (S.D.N.Y. May 13, 2015) ECF No. 106 (granting dismissal post-*Dudenhoeffer*) (motion for reconsideration denied).  *See also In re Lehman Bros. Sec. & ERISA Litig.*, 2015 WL 4139978 (S.D.N.Y. July 10, 2015) (same).

[8]    The Second Circuit in *Donovan* stated:  "[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these."  *Donovan*, 754 F.2d at 1056.  *See also La Rue v. DeWolff*, 128 S. Ct. 1020, 1024 n.4 (2008) ("[Section] 502(a)(2) encompasses appropriate claims for 'lost profits.'").

computer model tracking the plans' company stock holdings.  Also, determinations must be made about the date on which Defendants knew or should have known AIG was an imprudent investment option, which was disputed.  These factors, among others, would impact significantly any recovery in this Action.  Plaintiffs anticipate that Defendants would challenge Plaintiffs' damages methodology, and recognize that presenting such complex and disputed testimony involves risks that the Settlement avoids.  As the *Marsh* court reasoned:

> Establishing damages in this case would have been a complicated endeavor.  The complex damages calculations in ERISA cases like this one are expert-intensive. …  Moreover, the damages issue in uncertain because courts have not had occasion to apply a damages measure in a case like this after trial.  That uncertainty coupled with [d]efendants' vigorous dispute of the damages issue, make establishing damages a risky proposition for [p]laintiffs.

265 F.R.D. at 140.  Given the analogous nature of this Action, the *Marsh* court's reasoning and conclusions are both instructive here.[9]

Thus, there is no assurance Plaintiffs would prevail if litigation were to continue, much less that they would recover more than the Settlement provides for the Settlement Class. Accordingly, the complex and contested questions of law and fact in ERISA litigation in general and in this Action in particular, underscore that Plaintiffs would face significant risks in establishing liability and damages and weigh in favor of a sum-certain settlement.

---

[9]      Not only would Plaintiffs face challenges in proving damages under *Donovan*, but they likely also would face the argument that damages should be measured using an alternative to the *Donavan* damages measure—one based on the alleged "artificial inflation" of AIG stock during the proposed class period.  Although Plaintiffs dispute that this measure of damages is appropriate, Plaintiffs' potential recovery could be significantly reduced.  Another argument that could significantly reduce damages is that "holder" damages are unavailable.  Plaintiffs contend that, unlike the securities laws which focus on stock *purchasers*, ERISA also provides relief for the imprudent plan *holding* of stock.  *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 463-64 (E.D. Penn. 2000).  Here, the bulk of the damages is attributable to *held* stock.  Should this Action continue, Defendants would likely argue that holder damages are not available, particularly in light of *Dudenhoeffer*, 134 S. Ct. 2459.  If Defendants were to prevail on that point, the amount recoverable would be significantly reduced.

### 6.    Factor six: the risks of maintaining the class action through trial

"This factor allows the Court to weigh the possibility that, if a class were certified for trial in this case, it would be decertified prior to trial." *Shapiro v. JP Morgan Chase & Co.*, 2014 WL 1224555, at *11 (S.D.N.Y. Mar. 24, 2014). The Court has only preliminarily certified a class in this case for settlement purposes. As discussed in detail *infra* in Section VI, Plaintiffs' Counsel believe this case is appropriate for class certification as it is a representative action brought by Plaintiffs on behalf of the Plans under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). *See, e.g.*, *In re Beacon Assoc. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012) ("Indeed, courts have noted that the distinctive 'representative capacity' aspect of ERISA participant and beneficiary suits makes litigation of this kind 'a paradigmatic example of a [23])b)(1) class.'"). In addition to satisfying all of the Fed. R. Civ. P. 23 requirements, certification provides procedural advantages enabling the efficient litigation of the asserted claims.

That said, class certification can be reviewed and modified at any time before trial, so there is always a risk that the Action, or particular claims in the Action, might not be maintained as a class through trial. If there were no Settlement, Defendants would, no doubt, contest class certification. Moreover, the Court could certify a more restrictive class than the Settlement Class. The Settlement eliminates the risk, expense, and delay associated with any class certification proceedings, including class certification discovery (both fact and expert) and related briefing. As such, the risks of failing to obtain class certification and failing to maintain the class through trial also weigh in favor of this Settlement. *See, e.g.*, *Marsh*, 265 F.R.D. at 140 ("There is also the risk that the [c]ourt would have denied [n]amed [p]laintiffs' motion for class certification on certain or all of its claims, thereby limiting or even precluding any possible

recovery for the [c]lass.…   Thus, the uncertainty surrounding class certification supports the approval of the settlement.").

### 7.    Factor seven:  Defendants' ability to withstand a greater judgment

It may be possible that Defendants could have withstood a greater judgment, but that factor does not militate against the final approval of the Settlement.  *See*, *e.g.*, *Global Crossing*, 225 F.R.D. at 460 ("the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate").  This is especially true where, as here, the other *Grinnell* factors weigh heavily in favor of settlement approval.  *See*, *e.g.*, *City of Providence*, 2014 WL 1883494, at *9 ("Courts, however, generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement.").  Without this Settlement, there is no assurance that Plaintiffs would prevail if litigation were to continue, much less that the Settlement Class would recover more than the Settlement provides for.  Here, the Court recently granted final approval of the settlement in the Securities Action, and AIG faces hundreds of millions of dollars of potential liability as a result of this Action.  Accordingly, there is some risk that AIG could not satisfy all of the pending liabilities against it, though Plaintiffs' Counsel regard this risk as somewhat remote.  Accordingly, this factor was not a focus of the Settlement negotiations.  *See*, *e.g.*, *Shapiro*, 2014 WL 1224666, at *11 (Noting "a defendant is not required to empty its coffers before a settlement can be found adequate," and reasoning, "JP Morgan's financial circumstances do not ameliorate the force of the other *Grinnell* factors, which lead to the conclusion that the settlement is fair, reasonable and adequate").

8.      **Factors eight and nine: the reasonableness of the Settlement
in light of the best possible recovery and attendant risks of litigation**

"The reasonableness of the [s]ettlement must be judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Shapiro*, 2014 WL 1224666, at *11 (citations omitted). "Courts agree that the determination of a reasonable settlement is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997) (citations omitted). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Here, there is a broad range of potential recovery if the Action were litigated to a conclusion rather than settled. As in other analogous cases, the "breach" date—when Defendants knew or should have known AIG stock was an imprudent retirement investment— would impact significantly Plaintiffs' potential recovery. Plaintiffs allege that AIG stock was an imprudent Plan investment by August 7, 2007, the beginning of the Class Period. If Plaintiffs were correct, the maximum principal Plan losses would be approximately $302.4 million. If Plaintiffs were only able to establish a breach date later in the Class Period, *e.g.*, February 11, 2008—when AIG disclosed a material weakness regarding the risk management and valuation of AIGFP's Credit Default Swaps ("CDS") portfolio—Plaintiffs believe the principal Plan losses would be reduced to approximately $204.9 million. And if Plaintiffs were able to establish a breach date of June 6, 2008—when the SEC announced an investigation into whether AIG overstated the value of its CDS portfolio—the principal Plan losses would be further reduced to approximately $164 million. Here, Plaintiffs' preliminary damages analysis indicates that the

Plans' alternative damages measure, in light of the above-noted potential breach dates, are substantially the same as the principal losses.   Later breach dates would result in smaller losses. *Marsh* referred to this specific "imprudence date" issue as "one significant factor" in that case, noting that determining when company stock became an imprudent investment option would "dictate a relatively wide range of possible recoverable damages in this case."   *Marsh*, 265 F.R.D. at 141.[10]

Plaintiffs expect that Defendants would advance several additional arguments to reduce or eliminate damages based on various circumstances and determinations, such as the possibility that (1) the price of AIG stock would increase, causing the Plans' losses to decrease accordingly; or (2) the Court finds that Plaintiffs cannot rely on either public or inside information; or (3) the Court finds that holder losses are not available, or are substantially reduced in light of Defendants' anticipated interpretation of *Dudenhoeffer* (based on which Plaintiffs anticipated Defendants to argue damages were at best only a few million dollars, and no more than $10 million to $20 million).  Thus, were Defendants to prevail on their argument that holder damages are unavailable, or that Plaintiffs cannot rely on either public or non-public information, the amount recoverable could drop to zero.  Plaintiffs dispute these damage theories, and would resist any effort to decrease their recovery, but, nonetheless, recognize their ability to recover is far from certain.

---

[10]    Based on the two later breach dates, discussed above, February 11, 2008 and June 6, 2008, the maximum range that Plaintiffs could reasonably expect to recover, is between approximately $164 million and $204.9 million. In addition, if holder damages were ruled unavailable, Plaintiffs would likely face a maximum recovery of approximately $20 million.  As the Class Notice notes, after deducting the maximum amount of attorneys' fees for which Plaintiffs' Counsel may apply, Plaintiffs' Counsel's unreimbursed litigation expenses, Class Notice costs, administrative and tax costs, and case contribution awards, the estimated net percentage recovery for the Class would be approximately: 8.5% of the maximum possible damages of $302.4 million; 12.6% to 15.7% of the above-noted recovery range of $164 million to $204.9 million (respectively); and over 128.3% of $20 million (or more, as damages approach zero).

The Settlement is well within the range of reasonableness considering the present and time-value of money, the probability of lengthy litigation in the absence of a settlement, the risk that the Class would not succeed in proving liability against the Defendants, the range of possible recovery at trial, and the potential that significant amounts of the applicable fiduciary liability insurance would be spent in further litigation and would not be available to pay any judgment obtained at trial.[11]   As Judge Harmon aptly summarized in approving an analogous settlement: "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." *Tittle v. Enron Corp.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005).

## IV.     THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED

"Rule 23(e)(1) requires that a court must direct notice in a reasonable manner to all class members who would be bound by the proposal to settle a class action."   *Shapiro*, 2014 WL 1224666, at *16.   As the Second Circuit noted, "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."   *Wal-Mart*, 396 F.3d at 113.   "[T]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceeding."   *Masters v. Wilhemina Modeling Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007).   "Notice is adequate if it may be understood by the average class member."   *Id*.   Moreover, as the court noted in an analogous ERISA breach of fiduciary duty action, "[f]or non-opt out cases, such as the ERISA

---

[11]      *See*, *e.g.*, *Global Crossing*, 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road.").

[a]ctions, [all that is required is] such unspecified 'appropriate notice' as the court may direct."
*Marsh*, 265 F.R.D. at 144; *see also Global Crossing*, 225 F.R.D. at 448 (same).

Notice in this Action satisfies these standards.  As this Court previously found, the direct-mail Class Notice, summary publication notice ("Publication Notice"), and establishment of a Settlement website and toll-free phone number was adequate to inform the Settlement Class of the terms of the proposed Settlement.  *See* Preliminary Approval Order at 5-6.

Pursuant to the Preliminary Approval Order, Class Notice has been sent by first-class mail, postage prepaid, to the last known address of each potential member of the Settlement Class.  Berdon Claims Administration, LLC ("Berdon"), an experienced class action settlement administrator, effectuated the notice program.   Using the mailing data for physical addresses obtained from AIG, Berdon initially mailed 25,159[12] notices on July 17, 2015.  *See* Rosenbaum Affidavit ¶ 6.  1,599 of these mailed Class Notices were returned to Berdon as undeliverable as addressed ("UAA").  *Id*. ¶ 7.  Of the Class Notices returned as UAA, two had forwarding addresses and were promptly re-mailed, leaving 1,597 potential Settlement Class members for whom Class Notices were returned as undeliverable without forwarding address.  *Id*.  Through a third-party locator service, Berdon obtained additional addresses for Settlement Class members, and was able to update addresses for 1,546 Settlement Class members.  *Id*. ¶ 8.  Berdon promptly re-mailed Class Notices to those updated addresses; only one Class Notice was returned as undeliverable for a second time.  *Id*.  As of the date of this filing, there are only 131 potential Settlement Class members whose Class Notice was returned as undeliverable and for whom

---

[12]     Deduplication by Berdon of the data file containing the names and last-known addresses of the potential Settlement Class members provided by the Plans' record-keeper, resulted in 25,238 records. *See* Rosenbaum Affidavit, ¶ 4. Of these addresses, 79 were pre-determined to be undeliverable using a national database of address changes compiled by the U.S. Postal Service. *Id*. ¶ 5.

Berdon was unable to obtain a valid alternative address.  *Id.* ¶ 10.  Thus, the Class Notice has been successfully delivered to approximately 99.5% of the Settlement Class.  *Id*.

Additionally, on July 20, 2015, Berdon published the Publication Notice in *The Wall Street Journal* (national edition) in the form approved by the Court. *Id.* ¶ 12.  The Class Notice, Settlement Agreement, Complaint, and all other Settlement-related documents were also posted on a website maintained by Berdon and listed in the Class Notice.  *Id.* ¶ 16.  Berdon also maintains a dedicated toll-free number to respond to Settlement Class inquiries.  *Id.* ¶¶ 13-14. Thus, in accordance with the Preliminary Approval Order, the Settlement Class was provided with ample and sufficient notice of this Settlement, including an appropriate opportunity to voice objections.  To date, no objections have been received.

## V.       THE PLAN OF ALLOCATION SHOULD BE APPROVED

"The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole:  namely, it must be fair and adequate."  *City of Providence*, 2014 WL 1883494, at *10.  "As a general rule, the adequacy of an allocation plan turns on …whether the proposed apportionment is fair and reasonable in light of that information."  *Id*. "A plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id*.

Here, the Plan of Allocation was designed by experienced Plaintiffs' Counsel, and provides a recovery to the Class (net of attorneys' fees, expenses, and case contribution awards) on a *pro rata* basis according to their recognized claims of damages.  All Settlement Class members are treated equally, such that no Settlement Class member is singled out for either disproportionately favorable or unfavorable treatment.  Under the Plan of Allocation: (1) each Class member receives a share of the Net Proceeds based approximately on the decline in the

value of the AIG Stock Fund he or she held in a Plan account over the Class Period in comparison with such value decline of the other Class members; and (2) the distribution takes place through the Plans so as to realize the tax advantage of investment in the Plans.[13]  The Plan of Allocation provides a fair structure for allocating the Net Proceeds among the Class members' Plan accounts, prorates damages among the Class members according to the loss incurred, and conforms to the allocation plans approved in similar ERISA actions.[14]

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Certification of the Settlement Class in this Action is warranted for numerous reasons. As an initial matter, before entering the Preliminary Approval Order, this Court examined the record and preliminarily certified the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1).  *See* Preliminary Approval Order at 2-4.  Nothing has changed in the record that would compel the Court to now reach a different conclusion for final approval of the Settlement Class.  Moreover, as numerous courts have held, certification is especially appropriate in this type of ERISA breach of fiduciary duty class action.  *See*, *e.g.*, *Marsh*, 265 F.R.D. at 142 ("Here, [p]laintiffs' ERISA breach of fiduciary duty claims are particularly appropriate for class certification.").  For purposes of effectuating this Settlement, Defendants have agreed not to pursue any of their affirmative and negative defenses, and the Parties have stipulated to a Class.  Settlement

---

[13]    A *de minimus* distribution amount of $10.00 is proposed to limit the administration costs borne by the Class.  For example, to ensure that former Plan participants receive settlement proceeds on a tax-free basis, Plan accounts may have to be created or reactivated.  A *de minimus* amount ensures that these administration costs are not excessive in relation to the benefits received.

[14]    *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *59 (S.D.N.Y. Apr. 6, 2006) (approving allocation plan that provided "recovery to damaged investors on a *pro rata* basis according to their recognized claims of damages"); *Global Crossing*, 225 F.R.D. at 463 (allocation plan approved where it allocated "the settlement amount among plan participants based on their losses").

Agreement, §§ I.1.46 and II.2.1. Accordingly, Plaintiffs set forth the legal and factual basis for Class certification under Fed. R. Civ. P. 23(a).

### A.      Plaintiffs Satisfy All Prerequisites for Class Certification

Rule 23(a) provides that a class should be certified if: (1) the class members are so numerous that joinder of all members is impracticable; (2) the action addresses questions of law or fact common to the class; (3) the class representatives' claims or defenses are typical of those of the class; and (4) the class representatives will fairly and adequately protect the class interests.

### 1.      Numerosity

To demonstrate numerosity, plaintiffs must show that joinder is "impracticable." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 279 (S.D.N.Y. 2003) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *Global Crossing*, 225 F.R.D. at 451 (finding numerosity standard met in analogous ERISA breach of fiduciary duty case). "A class of more than forty members presumptively satisfies the numerosity requirement." *See In re Puda Coal Secs. Litig.*, 2013 WL 543007, at *16 (S.D.N.Y. Oct. 1, 2013). Here, the Class consists of 25,238 members. *See* Rosenbaum Affidavit, at ¶ 4. Thus, joinder of all Class members is plainly impracticable.

### 2.      Commonality

The threshold commonality inquiry is whether there are any questions of fact or law common to the class. Fed. R. Civ. P. 23(a)(2); *see also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions. "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (citation omitted).

Here, several common questions affect each Class member, including whether: the Individual Defendants were fiduciaries of the Plans; they breached their fiduciary duties; the Plans and the participants were damaged by such breaches; the Class is entitled to damages, and the proper measure thereof.  Because these questions concern the common issues of fiduciary responsibilities owed to the participants, "these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2)."  *Moore v. Simpson*, 1997 U.S. Dist. LEXIS 13791, at *9-10 (N.D. Ill. Sept. 5, 1997); *see also In re WorldCom, Inc. ERISA Litig.*, 2004 U.S. Dist. LEXIS 19786, at *7-8 (S.D.N.Y. Oct. 4, 2004).

### 3.    Typicality

"Typicality exists where the 'claims of the representative plaintiffs arise from the same course of conduct that gives rise to claims of other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives.'"  *Global Crossing*, 225 F.R.D. at 452 (citation omitted).  Typicality is often met in class actions for breaches of fiduciary duty under ERISA.  *See*, *e.g., Koch v. Dwyer*, 2001 U.S. Dist. LEXIS 4085, at *9 (S.D.N.Y. Mar. 22, 2001).

Plaintiffs' claims are typical of those of the Class.  Each Plaintiff was a participant of at least one of the Plans during the Class Period, and had part of their individual Plan investment portfolio invested in AIG stock or the AIG Stock Fund.  Each Plaintiffs sustained the same type of injury arising from Defendants' alleged fiduciary duty breaches.  Further, ERISA permits Plaintiffs to bring a claim for plan-wide relief.  *See* 29 U.S.C. § 1109(a).  As such, Plaintiffs and the absent Class members seek the same relief for the same wrongs by the same Defendants. Accordingly, Plaintiffs' claims are typical.

### 4.     Adequacy

Rule 23's adequacy determination requires the Court to consider whether the Plaintiffs' interests may be antagonistic to those of the other Class members and whether the proposed Co-Lead Class Counsel are qualified to conduct the litigation.  *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  Named Plaintiffs have no interests antagonistic to those of the Class.  Where, as here, plaintiffs and the class share the goal of maximizing recovery, no conflict of interest exists.  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Plaintiffs have also retained highly qualified attorneys to conduct this Action.  Plaintiffs' Counsel have substantial experience, individually and collectively, litigating complex ERISA breach of fiduciary duty class actions both within this District, and throughout the nation.  Joint Decl. ¶ 41.  Plaintiffs' Counsel stand "ready, willing and able to devote the resources necessary to litigate this case vigorously," *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996), and have invested substantial resources in prosecuting this Action.

### B.     The Class May be Properly Certified Under Rule 23(b)(1)

In addition to meeting the Rule 23(a) criteria, a party seeking class certification must also satisfy one of the Rule 23(b) requirements, where under a class may be certified if the prosecution of separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. . . .

Fed. R. Civ. P. 23(b)(1).

23

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *Ikon*, 191 F.R.D. at 466. Certifications under both Rule 23(b)(1)(A) and (B) are common in ERISA breach of fiduciary duty cases because of defendants' alleged "unitary treatment" of the individual members of the proposed Class. *Id*. (citation omitted). *See also* Fed. R. Civ. P. 23(b)(1)(B) advisory committee's notes (1966 Amendment) (certification under 23(b)(1) appropriate in cases charging breach of trust by fiduciary to large class of beneficiaries).

"Because of ERISA's distinctive representative capacity and remedial provisions, ERISA litigation . . . presents a paradigmatic example of a (b)(1) class." *Global Crossing*, 225 F.R.D. at 453 (citations omitted). Due to the "plan-wide" relief ERISA offers for violations of fiduciary duties owed to covered plan participants, this Action is a textbook case for class treatment under Rule 23(b)(1).[15] Thus, although Class certification is also appropriate under the other subdivisions of Rule 23(b), the Court should certify this Class under Rule 23(b)(1).

## C.    Plaintiffs' Counsel Should Be Appointed Co-Lead Class Counsel

Unless a statute provides otherwise, a court that certifies a class must appoint class counsel, and an attorney appointed to serve as class counsel "must fairly and adequately represent the interests of the class." *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *5 (N.D.N.Y. Mar. 13, 2012) (quoting Fed. R. Civ. P. 23(g)(1)). In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the

---

[15]     *See Ikon,* 191 F.R.D. at 466 ("[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. There is also risk of inconsistent dispositions that would prejudice the defendants...") (citations omitted).

types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.*

As indicated by the Court's appointment of Plaintiffs' Counsel as interim co-lead class counsel (Docket No. 16), proposed Co-Lead Class Counsel are among the most experienced ERISA class action attorneys in the nation, and are highly qualified to prosecute this litigation. *See* Joint Decl. ¶ 41 and Exhibits 3-6 to Joint Decl. Plaintiffs' Counsel, individually and collectively, have been appointed to serve on behalf of numerous plaintiff ERISA classes, including being appointed as co-lead class counsel in *In re AIG ERISA Litig.*, 04-CV-9387 (JES)(AJP) (S.D.N.Y.). The course of this Action, which has included significant motion briefing and completion of Plaintiffs' fact discovery, has amply demonstrated the proposed Co-Lead Class Counsel's knowledge of the applicable law and willingness to commit the resources necessary to protect the interests of the Settlement Class. Plaintiffs' Counsel have done substantial work to prosecute the claims in this Action. They have prepared detailed complaints and amended complaints, extensively briefed the many complex issues in this case, conducted substantial written and deposition discovery on complex subjects, consulted with experts, and engaged in hard-fought and ultimately successful negotiations with Defendants and very capable defense counsel. Thus, Plaintiffs respectfully request that the Court appoint Plaintiffs' Counsel as Co-Lead Class Counsel for the Settlement Class.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Settlement and Plan of Allocation should be granted final approval because they are fair, adequate, and reasonable. Moreover, the Settlement Class meets all the requirements of Rule 23 and should be finally certified.

Dated:  August 11, 2015

Respectfully submitted,

**HARWOOD FEFFER LLP**

/s/Robert I. Harwood_____
Robert I. Harwood
Tanya Korkhov
488 Madison Avenue
New York, NY  10022
Telephone: (212) 935-7400

**Co-Lead Counsel**

**SQUITIERI & FEARON LLP**

/s/Lee Squitieri_____
Lee Squitieri
32 East 57th Street, 12th Floor
New York, NY  10022
Telephone: (212)421-6492

**Co-Lead Counsel**

**WOLF POPPER LLP**

/s/Marian P. Rosner_____
Marian P. Rosner
Andrew E. Lencyk
845 Third Avenue
New York, NY  10022
Telephone: (212) 759-4600

**Co-Lead Counsel**

**KELLER ROHRBACK L.L.P.**

/s/Lynn Lincoln Sarko_____
Lynn Lincoln Sarko
Erin M. Riley
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900

**Co-Lead Counsel**